## Cedar Rapids Insurance Co.

v.

## Julia C. Shimp.

</div>

1. Proof of loss—Waiver.—Where the contract of insurance required the appellee to make proof of loss by a sworn statement, the fact that the adjuster of the company made an examination for the company did not discharge or relieve appellee from making the statement required in the policy.

2. Collection of overdue premium—Waiver.—The collection of an overdue premium, after a loss, is not a waiver of a defense of forfeiture of the insurance by the assured, by a breach of the conditions in other respects.

Cedar Rapids Insurance Co. v. Shimp.

3. Continuing warranty.—Where the terms employed in a policy were, "That if it (the property) be used for any other purpose than is mentioned in said application, without the consent in writing of the company, then this policy to be void." *Held*, that the object and meaning of this provision must have been clearly understood by the parties as a continuing warranty as to the use of the property.

4. Change of occupancy.—The conversion of a dwelling house into a house of prostitution is such a change in the character of the occupation of the property as to render the policy void.

5. Agency—Instruction.—An instruction that "if the jury believe from the evidence that H. was the agent of said company for taking the application for said insurance, and that he wrote it out, then the company would be chargeable with notice of any matter affecting such application of which H. had notice." *Held* erroneous. Even if the agent had notice he had no power to pass upon the risk, or make a contract of insurance, or vary the terms of the application voluntarily made by appellee.

Appeal from the Circuit Court of Champaign county; the Hon. C. B. Smith, Judge, presiding. Opinion filed January 23, 1885.

Mr. Wm. A. Day and Mr. C. J. Deacon, for appellant; that the increase in the risk need not be proved where the parties agree in advance that a change without the consent of the company shall " render the policy void," cited Wood on Fire Insurance, § 119; Worcester v. Ins. Co., 9 Gray, 27; Kelley v. Ins. Co., 97 Mass. 284; Howell v. Equitable Society, 16 Maryland, 377; McGowan v. Ins. Co. (Vt. Case, 1881), Ins. L. J. Vol. 11, p. 209; Indiana Ins. Co. v. Brehm, (Ind. Case, 1883), Ins. L. J. Vol. 12, p. 607; Fire Association of Phila. v. Williamson, 26 Pa. St. 176; David v. Ins. Co., 13 Ia. 74; Hygum v. Ins. Co., 11 Ia. 21.

As to warranty: Franklin Ins. Co. v. Martin, 8 Ins. L. J. 134.

Where the agent's authority is limited to taking the application and forwarding it to the company for acceptance or rejection, notice to the agent will not bind the company; the application must govern: Ayer v. Ins. Co., 17 Ia. 176; Anson v. Ins. Co., 28 Ia. 84; Dickinson v. Ins. Co., 41 Ia. 286; Reynolds v. Ins. Co., 36 Mich. 131; Morse v. Ins. Co., 5 Ins. L. J. 409.

As to waiver of proof of loss: Wood on Ins. 411; Inman v.

Ins. Co., 20 Wis. 217; Blossom v. Ins. Co., 64 N. Y. 162; Scammon v. Germania Ins. Co., 101 Ill. 624; Edgerly v. Ins. Co., 43 Ia. 590; Underwood v. Ins. Co., 57 N. Y. 500; Ripley v. Ins. Co., 30 N. Y. 138; Bruck v. Ins. Co., 78 N. Y. 593; Jewett v. Ins. Co., 29 Ia. 565.

Notice of loss is not a compliance with the other condition requiring sworn proofs: Scammon v. Germania Ins. Co., 101 Ill. 624; Edgerby v. Ins. Co., 48 Iowa, 646; Edwards v. Ins. Co., 75 Penn. 378; Beatty v. Ins. Co., 66 Penn. 9; Blossom v. Ins. Co., 64 N. Y. 162.

Mr. E. L. SWEET and Mr. J. S. WOLFE, for appellee; as to what constitutes a waiver of proof of loss, cited Williamsburg City Fire Ins. Co. v. Cary, 83 Ill. 453; Lycoming Fire Ins. Co. v. Dunmore, 75 Ill. 14; Peoria M. & F. Ins. Co. v. Whitehill, 25 Ill. 466; Wait's Actions and Defenses, 80; West Rockingham Ins. Co. v. Sheets, 26 Grattan (Va.), 854; Owen v. Farmers Ins. Co., 57 Barb. 518; 1 Greene, S. C. Reports (N. J.), 110.

WELCH, J.   This was a suit in assumpsit brought by appellee against the appellant to recover for a loss under a policy against fire.   By said policy appellant insured the appellee for the term of three years from June 14, 1882, against loss by fire, to the amount of $1,500, distributed, on dwelling, $900; on furniture, $200; on clothing, $250; on piano, $150. In February, 1883, the property insured was totally destroyed by fire.   The trial in the court below resulted in a verdict in favor of appellee for the sum of $1,275, for which sum and costs judgment was rendered against appellant, from which judgment this appeal is taken.   Various errors are assigned. The principal errors assigned are as to the giving and refusing to give certain instructions.   The question as to the instructions given and those refused, as to which of them announced the correct law in this case, are to be determined by the contract of insurance sued on, and the effect to be given to certain letters of the agent of appellant, and his acts in regard to the loss, together with the receipt by appellant of a

portion of the premium on said policy after the loss. By said policy, the appellee was required forthwith to give notice of loss, and within thirty days deliver to appellant, at Rockford, Ill., "a sworn statement containing a full and particular account of such loss or damage, stating the cause of the same, the cash value of the property destroyed or damaged, and the interest of the assured therein. It is conceded that the giving of the notice and the making of the sworn statement as required by the policy, is a condition precedent to a right of recovery. The declaration in this case concedes that no proof of loss was made as required by the policy, but avers that the appellant waived and dispensed with the giving of said full and particular account of said loss. The learned counsel for appellee in their brief say "that the waiver may be shown expressly or by evidence of intent not to pay in any event, or by defenses inconsistent with an intention to pay if proofs had been furnished." And it is claimed that a waiver has been established in this case by the last two named. When and at what time must this intent not to pay in any event be made known to the insured? It is conceded that if the insurer, on the reception of the notice of loss, denies all liability and gives the insured notice thereof, or if, after proof of loss, payment is refused on the ground that it is not liable, this would in law be a waiver. In the first case suggested, after notice of loss and denial of all liability by the insurer and notice thereof to the insured, the law would not require of the insurer the performance of the useless duty of making out the proofs, and in the second case suggested, the refusal to pay, based on the ground of want of liability and not upon the ground of defective proofs, and notice thereof to the insured, the insurer would be estopped from insisting on proof of loss being defective. It would seem clear that this intent not to pay, or denial of all liability, must be given to the insured within the time in which she was required to furnish the proof. There were certain letters of the agent of appellant to appellee in evidence, one of date Feb'y 27, 1883, in which is acknowledged notice of loss: " In answer will say, I will be able to reach your place in a few days to look the

matter up. Trusting this will be satisfactory;" and on March 12, 1883: "I have been unavoidably delayed but will reach your place the latter part of this week." On the 15th of March, 1883, the agent 'visited Champaign in relation to the loss of appellee "made an investigation of the circumstances of the fire, inquired of the neighbors of the character of the persons occupying the house—put in one day at it. I made no adjustment, it didn't look to me like an honest loss, and went home waiting proofs which would develop the origin of fire and the character of house. I left Champaign next morning, made inquiry for Mrs. Shimp and was informed she was out of town; was not at Champaign until the 24th or 25th of May, after suit brought."

The learned judge who tried this case gave to the jury for appellee instructions 3 and 7.

3. "The court instructs the jury that if they believe from the evidence that the adjuster of said company on being informed of the loss of said property, wrote to the plaintiff that he would come to adjust such loss, this would be a waiver of further notice of loss unless it was insisted on." We are unable to account for the giving of this instruction except that in the hurry of the trial the judge did not have time to examine it critically. It is not further notice of loss that is insisted on. Notice of the loss was acknowledged. It is the proof of loss required by the policy prior to the right of recovery. The instruction is also objectionable in this, that there is no evidence on which to base that portion of the instruction that the adjuster of the company "wrote to the plaintiff that he would come to adjust such loss."

7. "If the evidence proves that the defendant, by its adjusting agent, Williams, made a general investigation of the loss in question for itself, and does not show that it made any inquiry for proofs of loss named in the policy, then, and in that case, the defendant must be held to have waived such proof of loss, and on that point the jury will find for the plaintiff in that event of proof."

This instruction announces the proposition that if the adjuster of appellant came and made an investigation of the loss

for itself and did not ask for further proofs, that that was a waiver. The contract of insurance required appellee to make the sworn statement required by the policy, and how the fact that the adjuster of appellant made an examination for it can discharge or relieve appellee from making the statement required to be made by her, we are unable to perceive. Nothing was said by the agent to her. She knew of his being there and going away. She knew she had made no proof of loss, and the greatest influence which his conduct could have probably had was to delay her in making proof until he came, which was correctly stated in the refused instructions of appellant, numbered 4 and 12, which should have been given, and appellee's instructions 3 and 7, which were given, should have been refused. We refer to the following authorities as sustaining our views: Blossom v. Ins. Co., 64 N. Y. 162; Bunts v. Ins. Co., 73 N. Y. 593.

The cases referred to by appellee's counsel in their brief, 75 Ill. page 14. Upon an examination of that case we find that formal proofs were made of the loss and presented to the company's agent, who declined to receive them, not because they were defective or informal, but because the company was not liable for the loss. That was held to estop the company from making any formal objections to the proof, when sued on the policy for the loss. Also the case in 83 Ill. page 453. Timely notice was given in that case and proof of loss made; when the proofs were furnished, the company made no objections. That is not this case; here no proof of loss was made.

A note was given by appellee to appellant, dated June 14, 1882, payable to appellant on the first day of June, 1883, payable at the First National Bank, Champaign, for the sum of $1,180. The note was for the balance of the premium on said policy, ten dollars having been paid at the time the policy was issued. This note and the proof of the payment of the ten dollars was admitted in evidence, against the objections of appellant. And on this evidence the court gave for appellee instructions numbered five and thirteen.

5. " The court instructs the jury that if they find from the evidence the company received a part of the premium for in-

surance on said policy after the loss, that act was a waiver of any supposed breaches of the conditions of said insurance existing before that time and known to the company or its agents, and not objected to by it or them."

13. "The court instructs the jury that if they find from the evidence in this case that anything was said or done by the plaintiff, or otherwise occurred, which would have worked a forfeiture of said policy, and that the defendant, the company, after having information of such acts or occurrences, received any part of the premium for such insurance, the receipt of said part of the premium was a waiver of any such supposed forfeiture."

In our view of this case, in paying the note the appellee did no more than she was legally liable to do, loss or no loss. The note and cash payment was the consideration of the policy. The note was just as much part of the consideration for the policy as the cash payment. The consideration was an entirety. The instant the policy was issued and delivered to appellee she became liable to pay the whole amount of the consideration therefor. Cases may be cited where the collection of an overdue premium after a loss, has been held to be a waiver of the payment of premium when due. We have been unable to find any case where such collection has been held a waiver of a defense of forfeiture of the insurance by the assured by a breach of the conditions in other respects. In our view these instructions number five and seven should have been refused. And the objections to the admission of the note and the evidence of the cash payment should have been sustained. After its admission in evidence its effect should have been qualified and limited, as asked in appellant's instructions numbered one, two, six and seven, which were refused; they should have been given. We refer to case of Tyne v. Fletcher, 1st Cowper, 666.

The contract of insurance in this case contains this further provision: "This insurance is based upon the representations in the application, of even number herewith, and made a part hereof, and it is hereby agreed that if any false statements are made in said application this policy shall be void, or if the

Cedar Rapids Insurance Co. v. Shimp.

risk be increased in any other manner, except by the erection and use of out-buildings, without the consent of the company indorsed thereon, or if the premises be used for any other purpose than is mentioned in said application without consent of company in writing, this policy to be void." The application of appellee referred to in the policy, and made part of it:

Question 7. "By whom are the above mentioned buildings occupied, and for what purpose?

A.   Applicant, as private dwelling."

"I warrant the foregoing application to contain a full description and statement of the occupation of the property hereby proposed to be insured. I warrant the answers to the foregoing questions to be true."

There was evidence tending to show that this dwelling was, at the time of the fire and for some time before, used as a house of prostitution. Yet the court was asked and gave for appellee, against objections of appellant, instructions number 1, 2, 8, 9, 10, 14.

1. "The court instructs the jury that keeping a bawdy house in a house insured as a dwelling house is not a forfeiture of such insurance, unless the proofs show that the risk was thereby increased; but if the agent who took the application for the risk knew that the house was then reported to be a bawdy house, and took such application with such knowledge, then it would not work a forfeiture of such policy."

2. "The court instructs the jury that the provisions in the policy concerning increase of risk would only suspend it while the increased risk continued, and if they find from the evidence in this case that at any time after the making of the insurance there were circumstances which increased the risk, but that they did not exist at the time the property was burned, then they would not excuse the company from any liability that might otherwise exist."

8. "The court instructs the jury that representations concerning the property insured must be true or the policy will be void, but representations concerning outside collateral matters will not have that effect unless such matters are shown to have been contributive to the loss."

9. "The court instructs the jury that representations as to the use for the house do not imply a continuance of such use, and using it for a different purpose will not avoid the insurance unless it is shown that such further use contributed to the loss, or in a substantial manner increased the risk."

10. "The court instructs the jury that representations as to the use of the property do not constitute a warrant that the premises insured shall be used for that purpose only, but if it is so used for a further purpose, such use will not avoid the policy if they find from the evidence that the loss did not arise from such use."

14. "If the jury believe from the evidence that one of the grounds upon which the defendant bases its defense to this action is that the plaintiff has forfeited her right to recover in this suit on the policy in evidence by reason of her fraud or fraudulent act, or illegal or unlawful conduct toward the property insured, or because of any illegal or immoral use or purpose in which she employed the said insured property, then, and in that case, the defendant must be held to have waived and dispensed with the proof of loss provided for in said policy, and a failure to furnish such proof of loss is no defense to this action under such state of proofs if the proof shows such state of facts."

We are unable to find any evidence in this record to sustain the first and second instructions; and the first is also objectionable in requiring that the risk be increased by the keeping of a bawdy house. Among the provisions of this policy, we find this provision, which after reciting other distinct grounds on which the policy will be void, uses this language: "Or if the premises be used for any other purpose than is mentioned in said application without the consent of the company in writing, then this policy shall be void." The application referred to states that it is used as the private dwelling of applicant. The contract of insurance names the use and provides that the policy shall be void if used for any other purpose. Whilst mere representations as to the use that is made of property applies to the present, and is not a warranty that such use shall continue, as well said, "If an insurance company wishes

Cedar Rapids Insurance Co. v. Shimp.

to protect itself by a warranty as to the future, or continuing use in the same manner as when insured, it may always do so by language the object and meaning of which will be understood by both parties." The terms employed in this policy are, " That if it be used for any other purpose than is mentioned in said application, without the consent, in writing, of the company, then this policy to be void." The object and meaning of this provision in this policy must have been clearly understood by the parties as a continuing warranty as to the use of said property; as a warranty as to the future continuance of the use in the same manner as it was being used at the time the policy was issued. The conversion of a dwelling house into a house of prostitution is such a change in the character of the occupation of the property as to render the policy void. Indiana Ins. Co. v. Brehm, 88 Ind. 578. These instructions, numbered 1, 2, 3, 9, 10, 14, conflict with what we conceive the law, in this; they should have been refused, and the instructions numbered 3, 5, 13, 14, 15, asked by appellant and refused, should have been given.

The court also gave for appellee, over appellant's objections, instruction number 12.

" The court instructs the jury that if they believe from the evidence that Hill was the agent of said company for taking the application for said insurance, and that he wrote it out, then the company would be chargeable with notice of any matters affecting such application of which Hill had notice." There is no evidence of knowledge to support the instruction, and considering Hill's agency, this instruction is erroneous, even in the event of knowledge on his part. He had no power to pass upon the risk, or make a contract of insurance, or vary the terms of the application voluntarily made by appellee. The policy had come into her hands long before the loss, and she was thereby made acquainted with this provision against change of occupancy or use and the effect of a change upon her policy. She is clearly within the rule of Hartford Fire Ins. v. Webster, 69 Ill. 392. This instruction should have been refused and appellant's instruction numbered eight, which was refused, should have been given.

Appellant's exceptions to the giving of the 4th, 6th and 11th of appellee's instructions were properly sustained. And there was no error in the refusal to give the 9th, 10th and 11th of appellant's instructions. For the reasons herein stated this cause is reversed and remanded.